No. 24,451.

JOHN E. DEMERRITT, *Appellee*, v. THE FORBES MILLING COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale—Cleaning Attachment to Steam Boiler—Time in Which Cleaner Might Be Tested—No Notice of Dissatisfaction Given.* Where a contract for the sale of a cleaning attachment to a steam boiler allowed the buyer sixty days after it was installed in which to make a trial of its effectiveness, installation is held to have been complete when the cleaner was affixed to the boiler, although by reason of the plant not being operated no test of it was made until later.

2. Same—*No Error in Instructions Refused.* In an action upon a written contract it is held that no error was committed in failing to instruct that under a contract for written notice an oral notice might be sufficient, or in withholding from the jury the issues of fraud and oral warranty.

Appeal from Shawnee district court, division No. 1; James A. McClure, judge. Opinion filed July 7, 1923. Affirmed.

*D. R. Hite,* of Topeka, and *Judson S. West,* of Kansas City, for the appellant.

*E. E. Martin,* of Kansas City, and *J. Glenn Logan,* of Topeka, for the appellee.

The opinion of the court was delivered by

Mason, J.: John E. DeMerritt, claiming by assignment from John T. Woolsey, who did business as the Acme Iron Company, obtained judgment for the price of two "Acme Steam Boiler Cleaners with skimmer pipe for same" against the Forbes Milling Company, which appeals.

The appliances, the purpose of which was to prevent the accumulation of scales in boilers, were sold under a written contract dated April 27, 1918. The printed blank prepared by the Acme company contained a provision that the purchaser should have sixty days after such cleaners were received within which to install, test and try them. At the suggestion of the defendant a change was made so that the sixty days should run from the time the cleaners were installed instead of from the time they were received, the defendant's letter on the subject saying: "We are installing two new boilers and they have not as yet been placed, and probably the skimmers would arrive before we would be able to have our boilers in place so that they might be tried out." The contract contained the following provisions:

"It is further agreed that if the cleaners are not satisfactory, the purchaser shall within the said 60 days notify the Acme Iron Co., in writing, by registered mail at Kansas City, Kansas, and if the cleaners cannot be made satisfactory, the purchaser shall, upon receiving shipping instructions, ship the cleaners back to the Acme Iron Co., with the freight charges to follow the shipment. . . . All agreements, terms and conditions of sale are included herein and salesmen or agents of the Acme Iron Co., have no power to waive, change or modify by word or deed, any of the provisions of this contract."

The defendant, according to its version of the transaction, was delayed several months in starting its plant and had no opportunity

to give the appliances a trial until sometime in January, 1919, although they had arrived in July and were attached to the boilers about sixty days later. They proved unsatisfactory—did not accomplish the results for which they were intended—and payment was refused on that account, the Acme company being so notified in January, 1919.

1. An instruction complained of, which under the terms of the contract we regard as proper, was to the effect that if the defendant failed to give notice of dissatisfaction within sixty days after the cleaners were installed the plaintiff was entitled to recover. The controversy turns largely upon whether the term "installed," as indicating when the sixty days for trial started to run, should be held to refer to the time the appliances were attached to the boilers or the time the use of the engines began. To the question "When were the machines installed in defendant's boilers?" the jury answered, "Prior to September 15, 1918." If that finding stands it is conclusive upon this feature of the case. There was sufficient evidence that the appliances were attached to the boilers at that time. Indeed the defendant's sales manager, who appears to have had charge of the matter, testified that the machines were in the plant "for about sixty days before they were installed on the boilers." No special instruction was given or asked as to the meaning of the word "installed." We think the jury proceeded properly in treating it as relating to the time of attachment. That seems to be the fair and natural meaning to be given it. The reason assigned by the defendant for substituting it for the word "received" was that the boilers were not yet in place, the clear implication being that the installation could take place as soon as they were, no suggestion being made of a delay in beginning to operate the plant. The defendant's letter on the subject of the change in the form of the contract included an agreement to notify the Acme company as soon as the boilers were placed. The jury found upon sufficient evidence that such notice was not given.

2. The contract of sale provided that if the cleaners were found unsatisfactory the defendant should within the sixty days give notice of the fact by registered letter. The defendant urges that the court erred in omitting to instruct that an oral notice would answer the purpose. The instruction on the subject spoke of the effect of the defendant notifying or failing to notify the Acme company of its

DeMerritt v. Milling Co.

dissatisfaction within sixty days, saying nothing of any written notice. No other instruction was requested. It seems very unlikely that the jury would have understood that for a notice to be effective it must have been in writing, but clearly no prejudice could have resulted in any event from an omission to instruct further on the subject, for there was no testimony of even an oral notice of dissatisfaction having been given prior to 1919, and under the finding already referred to the sixty days had expired before that time.

Evidence was given in behalf of the defendant that prior to the execution of the written contract for the purchase of the machines the Acme company's salesman orally "guaranteed that they would take all of the scale and dirt out from the water in the boilers"; and that he "stated these machines would absolutely keep the tubes clean and free from such scale; that the reason they [the defendant] entered into the agreement was solely because he guaranteed this machine would do as stated above." This evidence was withdrawn from the consideration of the jury, and the defendant complains of the ruling. The written contract was complete in itself and could not be varied by evidence of prior oral guaranties. The representations were not alleged in the answer to have been made fraudulently or with knowledge of their falsity; they were in the nature of opinions and predictions. Moreover the defendant undertook to give notice of any dissatisfaction within the sixty-day limit. We find no error in the court's refusal to submit the issue of fraud or oral guaranty.

In 1919 some conversations about the machines took place between representatives of the parties, but no new contract was made, and by this time their rights and liabilities had become fixed, although the Acme company had apparently not yet learned of the date of installation.

The judgment is affirmed.